UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14-cv-00008

TONY SCISNEY                                                                                      PLAINTIFF

V.

GENERAL ELECTRIC COMPANY                                                        DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant's Motion for Summary Judgment [DN 29]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendant's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

Plaintiff Tony Scisney has been employed by Defendant General Electric since October 18, 2004 at Defendant's Madisonville, Kentucky facility, and throughout his employment, Plaintiff has always held the position of hourly Flex II Operator, also referred to as "Product Tech." (Def.'s Mtn. Summ. J. [DN 29] at 3.) Since 2004, Plaintiff has been continuously employed and a member of the Union. (<u>Id.</u>) In February 2005, Plaintiff's co-worker, Jason Gibson, allegedly informed Plaintiff that many employees were watching Plaintiff because they believed that he was sent from Defendant's corporate office to close down the plant. (Pl.'s Dep. Tr. [DN 31-1] at 57.) Thereafter, beginning in 2005, Plaintiff filed the first of numerous complaints regarding his co-workers, as he believed them to be surreptitiously watching, following, and talking about him. (<u>Id.</u> at 54–57, 146–47, 150, 157–61, 173–79, 182–88, 190–95, 215–26; Pl.'s Dep. Exs. [DNs 30-13, 30-14, 30-15, 30-18, 30-20, 30-21, 30-22, 30-25].) Between 2005 and 2012, Plaintiff filed over sixty complaints about one co-worker in particular, Steve Austin. (Pl.'s Dep. Tr. [DN 31-1] at 97.) In response to these complaints, Defendant

assigned over a dozen investigators to review over two dozen of Plaintiff's concerns and conducted at least three dozen separate interviews, yet none of the investigators were able to verify his claims. (Id. at 98; Pl.'s Dep. Exs. [DNs 30-13, 30-14, 30-15, 30-18, 30-22].) Plaintiff also reported Austin's behavior to his supervisor, the Union, four different Human Resources representatives, and the corporate hotline, yet Plaintiff's claims were never substantiated by any party. (Pl.'s Dep. Tr. [DN 31-1] at 97–98.) In 2007, Plaintiff filed an official charge with the Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging racial discrimination, as he had been "harassed by other employees and management by being followed on his breaks and outside to his truck." (Id. at 147; Pl.'s Dep. Ex. [DN 30-13] at 2.) Plaintiff claims there was never any resolution to this charge. (Pl.'s Dep. Tr. [DN 31-1] at 146–49.)

During this time, Plaintiff filed several additional complaints alleging inequities in the distribution of overtime hours, racial discrimination, and harassment in the workplace. (Pl.'s Dep. Ex. [DN 30-9].) He brought these complaints through the Union, and they took the form of grievances. (Id.) These grievances were made on August 19, 2009, July 8, 2010, December 12, 2011, April 25, 2012, May 8, 2013, August 27, 2013, March 18, 2014, and April 19, 2014. (Id.) In these grievances, Plaintiff claimed various supervisors denied him overtime opportunities, he was not contacted in a timely fashion regarding overtime opportunities, and he was never permitted to make up missed overtime hours. (Pl.'s Dep. Tr. [DN 31-1] at 38–46, 51–52, 100–16, 132–34.) However, Plaintiff also admits that he worked more overtime than most, if not all, other people on his shift, Caucasian employees were upset about the overtime distribution as well, Caucasian employees were similarly notified of overtime opportunities late, and Caucasian employees were also not allowed to make up overtime hours. (Id. at 38–46, 51–52, 101–03,

106–07, 111–13, 124, 132–34, 139–40.) He additionally claims that he was denied overtime in retaliation for his other numerous complaints of racial discrimination. (Id. at 171–77, 196–98.)

Of these many complaints and grievances, two are particularly important, and both allege racial discrimination and retaliation. The first, which Plaintiff filed on July 19, 2011, alleged that Austin was following him and watching him. (Pl.'s Dep. Exs. [DNs 30-13, 30-22].) In response to this complaint, Defendant assigned the case to Gina Kirby, the Madisonville ombudsperson. (Id. [DN 30-13] at 3.) According to the EEOC investigative report, Plaintiff then refused to cooperate in the investigation with Kirby, so Defendant reassigned the case to Janet Radford, a quality engineer. (Id.) When meeting with Radford on July 20, 2011, Plaintiff was accompanied by a Union representative, John York, who told Radford that Plaintiff "did not want to talk about" his allegations, that he had previously complained about Austin's behavior, and that he was not going to get any help from GE, so "the best thing for him to do" was to "see a lawyer." (Id.) Plaintiff finally agreed to speak with Radford again on July 26, 2011 and stated that a co-worker, Phil Lyles, placed a cigarette-shaped eavesdropping device in his toolbox, that Lyles had pulled a knife on a co-worker, but Plaintiff did not report it because he had no proof, and that many people were talking about him behind his back. (Id.) Following this discussion, a team of HR representatives and medical professionals met to discuss Plaintiff's allegations and his "paranoid" and "delusional" behavior. (Id. at 3–4.) They then determined that he should be referred to the Employee Assistance Program (hereinafter "EAP") so that he could speak with a counselor. (Id.)

Subsequently, on November 10, 2011, Plaintiff filed a complaint with the EEOC regarding his referral to the EAP, and he later filed the same complaint with the Kentucky Commission on Human Rights (hereinafter "KCHR") on January 25, 2012. (Id. [DN 30-11] at

3

1.) Plaintiff claimed that he was required to seek medical treatment through the EAP program because of his "race . . . in violation of Title VII of the Civil Rights Act of 1964, as amended." (Id.) Plaintiff claims that Defendant sent Plaintiff to counseling in retaliation for his prior complaints made regarding his co-workers and racial discrimination. (Pl.'s Dep. Tr. [DN 31-1] at 141.) Though this charge was investigated by the EEOC and the KCHR, it was ultimately dismissed by both agencies. (Id. at 145; Pl.'s Dep. Ex. [DN 30-11] at 2.) Plaintiff then received his Notice of Suit Rights after the charge was dismissed.[1] (Pl.'s Resp. [DN 35] at 8.)

Plaintiff filed the second important complaint on December 12, 2011. On this day, Plaintiff was assigned to operate the mate/face machine (his typical job) while employees from the third shift worked overtime and cleaned. (Pl.'s Dep. Tr. [DN 31-1] at 71–78.) Plaintiff, along with other employees from the second shift, arrived early in order to work overtime and clean after the first shift, but they were required to work the machines instead. (Id. at 71–78.) After performing his duties, Plaintiff filed a grievance alleging racial discrimination because he was assigned a less desirable task than those employees who were assigned to clean. (Id.) However, Plaintiff acknowledged that he was the only employee qualified to operate the mate/face machine on the second shift, Caucasian employees were also required to work the machines rather than perform the preferred cleaning duties, and everyone on the second shift complained that the other employees were assigned cleaning rather than machine duty. (Id. at 84–87.) Plaintiff maintains that the undesirable work assignment was a product of retaliation for his previously filed EEOC charge, which he filed slightly over one month prior. (Pl.'s Compl. [DN 1] ¶ 25.)

In the midst of these numerous complaints and grievances, Plaintiff filed a joint petition for Chapter 13 bankruptcy on April 20, 2012 with his wife, Nadine Scisney. (Pl.'s Dep. Ex. [DN

---

[1] It is unclear from the evidence and pleadings when Plaintiff received this letter from the EEOC.

30-2] at 49.)  Plaintiff and his wife listed their personal assets under Schedule B of the petition, and marked "NONE" with an "X" beside numeral twenty-one, which asked the debtor to list all "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." (Id. at 15.)  Plaintiff and his wife were represented by attorney Mark R. Little in filing their petition. (Id. at 41.)  Plaintiff's bankruptcy plan was confirmed on May 17, 2012 and made no mention of any unliquidated claims or actions.  Order of Confirmation, In re Tony Randall Scisney and Nadine Scisney, No. 12-40512-acs (Bankr. W.D. Ky. May 12, 2012), CM/ECF No. 12.  Plaintiff and his wife have additionally amended their confirmed plan on several occasions to change amounts to be paid, to include arrearages, to include another creditor, and to increase the plan percentage to 100 percent.  Orders Granting Motions to Amend, In re Tony Randall Scisney and Nadine Scisney, No. 12-40512-acs (Bankr. W.D. Ky. May 12, 2012), CM/ECF Nos. 28, 29, 31, 64.

On January 24, 2014, over two years after filing the complaints at issue, Plaintiff brought the instant action alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000 et seq. and KRS § 344.010 et seq. (Pl.'s Compl. [DN 1] ¶¶ 18–28.)  Plaintiff claims that he suffered racial discrimination based on the adverse employment actions that Defendant took in denying him overtime opportunities, in requiring him to see a counselor through the EAP, and in requiring him to perform an unfavorable task. (Id. ¶¶ 13–15.)  Additionally, Plaintiff claims that Defendant's discriminatory actions were taken also in retaliation for his prior complaints alleging discrimination and harassment. (Id. ¶¶ 24–25.)  Based on the facts in the pleadings and in discovery, Defendant now moves for summary judgment, alleging it is entitled to judgment as a matter of law on all of Plaintiff's claims and no genuine issue of material fact exists. (Def.'s Mtn. Summ. J. [DN 29] at 2.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Defendant asks the Court to grant its Motion for Summary Judgment based on four distinct theories. First, because Plaintiff failed to disclose his discrimination and retaliation claims in his bankruptcy petition, Plaintiff should be judicially estopped from bringing them in

this Court. Second, Plaintiff failed to exhaust administrative remedies with respect to his overtime opportunities and unfavorable work assignments. Third, because the terms and conditions of Plaintiff's employment are governed by a Collective Bargaining Agreement and are preempted by the Labor Management Relations Act, they are subject to a six-month statute of limitations and are untimely. And, lastly, Plaintiff cannot present any evidence creating a genuine issue of material fact in regards to the elements required to establish a prima facie case of racial discrimination or retaliation. Though Defendant has argued many points in its briefs, the Court finds the first persuasive, and Plaintiff is judicially estopped from bringing this action.

### A. Bankruptcy Disclosures

Pursuant to Section 521 of the Bankruptcy Code, a debtor is required to file "a schedule of assets and liabilities," "a schedule of current income and current expenditures," and "a statement of the debtor's financial affairs," among various other documents and records. 11 U.S.C. § 521(a)(1)(B). It is well-settled that a cause of action is an asset that must be disclosed in the debtor's schedule of personal property pursuant to Section 521. Schultz v. Hydro-Gear Ltd. P'ship, No. 5:12-CV-10, 2012 WL 3527068, at *4 (W.D. Ky. Aug. 15, 2012) (citing Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004)). The duty of disclosure in bankruptcy "is a continuing one, and a debtor is required to disclose all potential causes of action." Id. (quoting In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999)). Further, "the disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." In re Colvin, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003); In re Coastal Plains, 179 F.3d at 208 (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988)) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to

achieve, the importance of this disclosure duty cannot be overemphasized."); see Lewis v. Weyerhaeuser Co., 141 F. App'x 420, 424 (6th Cir. 2005). Defendant contends that because Plaintiff did not list his racial discrimination and retaliation claims in his schedule of assets, the doctrine of judicial estoppel bars Plaintiff from asserting the claims in the instant action.

### B. Judicial Estoppel

Generally, the doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n. 8 (2000)); Lewis, 141 F. App'x at 424. "The Sixth Circuit has stressed that the doctrine of judicial estoppel 'preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" Schultz, 2012 WL 3527068, at *4 (quoting Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002); Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)); see Lewis, 141 F. App'x at 424 (internal citations omitted). "[T]he evil to be avoided is colorfully described as 'the perversion of the judicial machinery,' 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' and 'hav[ing] [one's] cake and eat[ing] it too.'" Browning, 283 F. 3d at 776 (citing Reynolds v. Comm'r, 861 F.2d 469, 472 (6th Cir. 1988)).

In Browning, the Sixth Circuit set forth a two-factor-test to determine if judicial estoppel should apply to a plaintiff's claim. The test states that plaintiffs are barred from "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." 283 F. 3d at 775. Both prongs of the Browning test are met in this case.

Under the first factor, "[t]he Sixth Circuit has held that pursuing a cause of action which was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support the application of judicial estoppel." Schultz, 2012 WL 3527068, at *4 (citing Lewis, 141 F. App'x at 425; Eubanks, 385 F.3d at 897; Browning, 283 F.3d at 775). Here, Plaintiff's pursuit of his claims against Defendant in the instant action is directly "contrary to" his sworn bankruptcy petition, in which he represented, under oath and penalty of perjury, that he had no contingent or unliquidated claims of any nature. See Schultz, 2012 WL 3527068, at *4. Second, the Sixth Circuit has ruled that "when a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient judicial acceptance to estop the party from later advancing an inconsistent position." Reynolds, 861 F.2d at 473. Here, the Bankruptcy Court for the Western District of Kentucky adopted that contrary position when it confirmed Plaintiff's Chapter 13 plan on May 17, 2012. See Schultz, 2012 WL 3527068, at *4. The Bankruptcy Court additionally adopted Plaintiff's position when it amended Plaintiff's and his wife's plan to change amounts to be paid, to include arrearages, to include another creditor, and to increase plan percentage to 100 percent. Therefore, Plaintiff has met the threshold requirements for judicial estoppel.

### 1. Inadvertence and Mistake

Regardless of whether a plaintiff meets the requirements of the Browning test, "[i]t is well-settled that judicial estoppel does not apply where the prior inconsistent position occurred because of 'mistake or inadvertence.'" Lewis, 141 F. App'x at 425 (quoting Browning, 283 F.3d at 776; see also New Hampshire, 532 U.S. at 753). The Browning court adopted the Fifth Circuit's approach in order to determine whether the debtor's omission was inadvertent. 283

F.3d at 776 (citing In re Coastal Plains, 179 F.3d at 210). The failure to disclose a cause of action may be deemed inadvertent where (1) "the debtor lacks the knowledge of the factual basis of the undisclosed claims," or (2) "the debtor has no motive for concealment." Id.

Plaintiff here contends that not disclosing his charges of discrimination and retaliation filed against Defendant was inadvertent. Under the first factor for inadvertence, however, Plaintiff has not alleged that he did not know of the factual basis of his claims before he filed his petition for bankruptcy, he only contends that he did not know that internal complaints could constitute "assets" in bankruptcy. Many courts within the Sixth Circuit have dealt with this exact issue. In Schultz, the plaintiff asserted that she lacked the factual knowledge of her undisclosed claim because she "had no way of knowing what constituted, legally, a hostile working environment severe enough to equate sexual harassment," though she admitted she likely knew beginning in January 2011, when she was forced to have sexual intercourse with her superior "in order to gain full-time employment." 2012 WL 3527068, at *5. The court found that the plaintiff absolutely "knew of her undisclosed claim when she filed a charge of discrimination with the EEOC" because she was then "well-aware of the factual basis for the undisclosed sexual harassment and retaliation claims." Id.; see also Bartlett v. Ohio Nat. Fin. Servs., Inc., No. 1:11-CV-638, 2013 WL 394381, at *2 (S.D. Ohio Jan. 31, 2013) (finding the plaintiff knew of the factual basis of her claims, as her EEOC claim was pending before she filed her petition and her lawsuit was pending before her discharge); Paris v. Sansom, No. 106-CV-98, 2007 WL 1345368, at *7 (E.D. Tenn. May 7, 2007) ("Plaintiff clearly understood the factual basis of her claim against TVA since her claims were being pursued through the administrative process when she filed her petition for Chapter 13 bankruptcy.") In Harrah, the court determined that the plaintiff "had knowledge of the factual basis as of April 10, 2008, the date on which she complained to

10

DSW about age discrimination regarding her employment." Harrah v. DSW Inc., 852 F. Supp. 2d 900, 905 (N.D. Ohio 2012). Prior to filing her petition for bankruptcy in 2009, the plaintiff had only "informed DSW's Human Resources Department that she believed [her District Manager's statements] constituted age discrimination regarding her employment." Id. at 902. The plaintiff did not file an official charge with the EEOC until March 16, 2010, but the court determined that she knew the factual basis of her claims on the date of her original complaint to her employer in 2008. Id.; see Hamlin v. Baptist Mem'l Hosp., No. 2:09-CV-02615-STA, 2011 WL 902351, at *4 (W.D. Tenn. Jan. 27, 2011) (finding that the plaintiff knew of her potential claim before filing her petition for bankruptcy because she had been filing internal grievances for the nine months prior). So, "[t]he debtor need not know all the facts or even the legal basis for the cause of action rather, if the debtor has enough information . . . to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be discharged." Williams v. Saxon Mortgage Servs., Inc., No. 13-10817, 2014 WL 765055, at *9 (E.D. Mich. Feb. 26, 2014) (quoting In re Coastal Plains, 179 F.3d at 210).

Here, Plaintiff knew the factual basis of his claims before filing his petition for Chapter 13 bankruptcy on April 20, 2012. Plaintiff filed over sixty internal complaints about his co-worker, Austin, between 2005 and 2012. Before the petition, he also filed three grievances regarding the denial of overtime opportunities, dated August 19, 2009, July 8, 2010, and December 12, 2011. Additionally, Plaintiff filed his EEOC charge on November 10, 2011 and his KCHR charge on January 25, 2012, both based on the same event that occurred on October 19, 2011. And, Plaintiff filed his grievance alleging discrimination and retaliation due to an unfavorable work assignment on December 12, 2011. Plaintiff knew the factual basis of his claims at the time that the allegedly discriminatory and retaliatory conduct occurred, as he

11

typically recognized and reported this conduct immediately on the day that it happened. Plaintiff also knew of the factual basis for potential claims post-petition but pre-discharge. Plaintiff filed several additional grievances alleging actionable conduct, dated April 25, 2012, May 8, 2013, August 27, 2013, March 18, 2014, and April 19, 2014. Plaintiff failed to include any of these numerous complaints and grievances in his original petition, and he additionally failed to amend his petition to reflect later claims, despite his continuing duty to do so. Even if Plaintiff was unaware of the legal significance of his claims at the time, he certainly was aware of their factual bases, as he consistently relayed relevant facts in his complaints and grievances. Because Plaintiff knew the factual bases of both his pre-petition and post-petition claims, yet failed to disclose any of them at any time, he fails the first prong in the test for inadvertence.

Plaintiff additionally claims that he had no motive to conceal his claims because he was merely looking for relief from his EAP mandatory counseling sessions. However, the Sixth Circuit has found that "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." Lewis, 141 F. App'x at 426. And, motive to conceal can be inferred from knowledge of the factual bases of the claims as discussed under the first factor. Dockery v. Countrywide Home Loans, Inc., No. 3:09-CV-00821-TBR, 2010 WL 2667376, at *3 (W.D. Ky. July 1, 2010) (citing Felix v. Dow Chemical, No. 2:07-cv-971, 2008 WL 207857, *6 (S.D. Ohio Jan. 23, 2008); Tyler v. Federal Express Corp., 420 F. Supp. 2d 849, 858 (W.D. Tenn. 2005), aff'd, 206 Fed. App'x 500 (6th Cir. 2006)). A motive to conceal can be inferred from the sole fact that a plaintiff knew of a claim and did not disclose it, as it stems from the idea that if the debtor's claim became a part of his bankruptcy estate, then the proceeds from it could go towards paying the debtor's creditors instead of the debtor. Tyler, 420 F. Supp. 2d at 858; see White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 479 (6th Cir. 2010).

Here, Plaintiff had knowledge of the factual bases of his claims prior to filing his petition for bankruptcy as seen in his sixty-plus complaints against Austin, multiple overtime grievances, EEOC charge, KCHR charge, and December 12, 2011 grievance. Plaintiff claims that he did not disclose any of these claims because he was only seeking non-monetary relief from the EEOC in order to get out of the EAP at the time he filed his bankruptcy petition. This mischaracterizes the facts. As stated, Plaintiff had filed multiple complaints and grievances alleging discrimination and retaliation; so, though he did not request any type of relief in those filings, at the time he signed his petition, he had many other outstanding claims besides his EEOC charge. However, Plaintiff did not disclose *any* of these potential claims to the bankruptcy court when filing his petition or at any subsequent time in order to amend his schedule of assets. Because this Circuit's presumption is that all debtors have an interest in concealment, and because he knew of the factual bases of his claims and still failed to disclose, the Court must infer that Plaintiff had a motive to conceal his potential causes of action. Therefore, Plaintiff additionally fails to meet the second prong of the inadvertence test as well.

### 2. Bad Faith

Despite the conclusion in the above analysis, if a court determines that a plaintiff acted in the "absence of bad faith," judicial estoppel will not bar that plaintiff's claims. Dockery, 2010 WL 2667376, at *4 (citing Eubanks, 385 F.3d at 898). "[A] plaintiff may show an absence of bad faith 'by showing [his] attempts to correct [his] initial omission. Since the bankruptcy system depends on accurate and timely disclosures, the extent of those efforts, together with their effectiveness, is important.'" Schultz, 2012 WL 3527068, at *4 (quoting White, 617 F.3d at 480). In Eubanks, the Sixth Circuit found that the plaintiffs omitted their cause of action from their bankruptcy schedules absent bad faith because they

> (1) notified the bankruptcy trustee of the claim during a meeting and the trustee requested all of the documents regarding the claim; (2) asked the trustee on several occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) moved the bankruptcy court for a status conference on the issue of the lender liability claim; (4) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their original bankruptcy petition to add the lender liability action to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel.

Lewis, 141 F. App'x at 426 (citing Eubanks, 385 F.3d at 895–97). Therefore, "although the plaintiffs had knowledge of the potential . . . claim during the pendency of the bankruptcy proceeding," the actions listed above "demonstrated that their omission was in good faith and in all likelihood inadvertent given the plaintiffs' 'constant affirmative' efforts to inform the trustee and the bankruptcy court of the claim 'through correspondence, motions, and status conference requests.'" Id. (citing Eubanks, 385 F.3d at 899 & n. 3).

Here, Plaintiff claims that he did not act in bad faith, rather he acted inadvertently, as he did not intend to "game the system" or "pull one over on the court." He states that, as a layperson, he was unaware that an unliquidated claim before an administrative agency, like the EEOC, was considered an asset, as there had been no disposition of his claim and he had no lawsuit pending in any court of law. He additionally argues that he was seeking relief from the required medical treatment mandated by the HR department, and he further did not understand that claims seeking non-monetary relief needed to be included in his disclosures. The Court finds these arguments unavailing under Sixth Circuit precedent, as they do not excuse Plaintiff's failure to correct or attempt to correct his initial exclusions.

    a.  **Attempts to Correct**

As stated, when determining a plaintiff's good faith, courts will look to a plaintiff's efforts to correct his initial omission. Many plaintiffs have claimed that they acted in good faith

because they eventually amended their bankruptcy plans to include unliquidated claims even though the amendments came after an adversarial pleading had been filed. However, "[t]he Sixth Circuit has . . . found that a partial amendment to Schedule B filed after facing a dispositive motion in the undisclosed lawsuit is insufficient to show an absence of bad faith." Vaughn v. Metro. Gov't of Nashville & Davidson Cty., No. 3:12-CV-01320, 2014 WL 234200, at *6 (M.D. Tenn. Jan. 22, 2014) (citing White, 617 F.3d at 480); see Cotita v. Verizon Wireless, 54 F. Supp. 3d 714, 720 (W.D. Ky. 2014) ("Cotita's disclosure to the bankruptcy trustee (and only the trustee) after Verizon's motion to dismiss is too little, too late under the Sixth Circuit standard."); Hayden v. GR Spring & Stamping, Inc., No. 5:13-CV-120-JMH, 2013 WL 2382831, at *4 (E.D. Ky. May 30, 2013) (finding that plaintiff's amendment to her claim after defendant filed a motion to dismiss, under Sixth Circuit precedent, "is too little, too late"); Schultz, 2012 WL 3527068, at *6 (finding that the plaintiff's "late effort to disclose her claims is entitled to little weight due to the timing of [the] amendment"); Harrah, 852 F. Supp. 2d at 906 (dismissing claims that were not disclosed in bankruptcy case until after dispositive motion filed); Swanigan v. Nw. Airlines, Inc., 718 F. Supp. 2d 917, 926 (W.D. Tenn. 2010) (finding unpersuasive the fact that plaintiff failed to disclose her pre-petition claim and amended her schedules only after defendant's motion to dismiss); Dockery, 2010 WL 2667376, at *5 ("[T]he Court finds that amendment of Plaintiffs bankruptcy filings would be insufficient to cure the defect of failure to disclose previously."). The Eleventh Circuit reasoned that allowing plaintiffs to amend their bankrupcy filings only after a challenge by an adversary "suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of debtors' assets." Burnes v. Pemco Aeroplex, Inc. 291 F.3d 1282, 1286 (11th Cir.2002)

15

(citations omitted). Additionally, when plaintiffs have amended their bankruptcy schedules or plans in other ways, thus evidencing that these plaintiffs knew of their continuing obligation to disclose assets and liabilities, courts are particularly skeptical of any alleged "good faith" omissions. Swanigan, 718 F. Supp. 2d at 926; see also Payne v. Cent. Def. Servs., LLC, No. 2:11-CV-02664-JPM, 2013 WL 3974575, at *2 (W.D. Tenn. Aug. 2, 2013) (dismissing plaintiff's suit when he amended his bankruptcy petition but did not amend it to include his discrimination charge).

As seen in the above cases, typically plaintiffs facing judicial estoppel make some effort to amend their bankruptcy filings, even if after an adversarial pleading has been filed. But, these late disclosures bear little success, as courts have routinely considered these efforts in bad faith and have dismissed these undisclosed claims. Here, however, Plaintiff has not even taken minimal steps to amend his bankruptcy schedule or plan to include his numerous pre-petition and post-petition complaints and grievances or even to include the instant action. This demonstrates a particularly egregious absence of good faith, as Plaintiff has totally neglected his duty to disclose all claims, even though he has brought his claims in this Court of law and there is no doubt that they are "unliquidated claims" for the purposes of bankruptcy. Additionally, Plaintiff has amended his plan several times since 2012 to change amounts to be paid, to include arrearages, to include another creditor, and to increase the plan percentage to 100 percent. This evidences Plaintiff's knowledge of his continuing duty to disclose all assets and liabilities, yet he still chose to ignore his obligation in regards to the claims at issue here. Ultimately, because Plaintiff has done less to appraise the bankruptcy court than most plaintiffs in similar situations and has made no attempt to amend his initial omission, the Court must find that judicial estoppel applies to bar Plaintiff's claims.

### b. Ignorance

This result does not change despite Plaintiff's additional statements that he was unaware that his EEOC and other complaints constituted unliquidated claims for the purposes of bankruptcy and that he had a duty to disclose these claims. Plaintiff contends that he was simply ignorant of his obligations with regards to his bankruptcy filings. Courts in this Circuit have found this claim to be exceptionally unpersuasive. Though other plaintiffs have argued that they were unaware of their duties or did not understand the questions on the personal property schedules, "[i]t does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure." Harrah, 852 F. Supp. 2d at 907 (citing Wallace v. Johnston Coca–Cola Bottling Group, Inc., 2007 WL 927929, at *2–3 (S.D. Ohio Mar. 23, 2007) (finding a plaintiff's "protestations of good faith" in an affidavit are unfounded when they rely on legal ignorance or mistake)); see Schultz, 2012 WL 3527068, at *6. In fact, the instructions on the bankruptcy schedules have been found to be "clear" in that debtors are to "list any claim of any nature," and debtors must "personally sign[] the schedules, swearing under penalty of perjury that the filing is accurate." Hayden, 2013 WL 2382831, at *4 (E.D. Ky. May 30, 2013). Therefore, a plaintiff's "self-serving statement" that he had not considered his claim a legal action at the time of filing the petition for bankruptcy is insufficient to evidence an absence of bad faith. Id. "Undoubtedly, if a simple statement such as this were sufficient, it would render the White opinion largely irrelevant, since a large portion of the opinion is dedicated to discouraging . . . "'gamesmanship.'" Id. (citing White, 617 F.3d at 476). Courts additionally find this argument unpersuasive when plaintiffs are represented in the bankruptcy, as it undercuts any possibility that the omission was due to a lack of understanding. Paris v. Sansom, No. 106-CV-98, 2007 WL 1345368, at *8 (E.D. Tenn. May 7, 2007); see

17

Payne, 2013 WL 3974575, at *6 ("Payne's alleged misunderstanding of his duty to disclose does not demonstrate an absence of bad faith, especially given the fact that he has been represented by bankruptcy counsel."); Garrett v. Univ. Hosps. of Cleveland, No. 1:12 CV 2371, 2013 WL 2186116, at *1 (N.D. Ohio May 21, 2013) (finding that plaintiff's assertions of lack of sophistication and legal ignorance were unreasonable to demonstrate inadvertence because plaintiff was represented by counsel in both her bankruptcy and employment matters); Harrah, 852 F. Supp. 2d at 907 ("[I]gnorance is unreasonable where Ms. Harrah was represented by an attorney in the bankruptcy, and any question about the required disclosures could have been answered by her attorney.").

    Other plaintiffs have further asserted that they did not omit their undisclosed claim in bad faith, but rather they relied on their attorneys' advice. Though Plaintiff does not specifically argue this point, he cannot fall back on it, as the Sixth Circuit has found this reasoning unconvincing as well. White, 617 F.3d at 483–84. Simply because a plaintiff's attorney did not include a cause of action in the bankruptcy filings does not mean that a plaintiff's omission should be excused. Id. Even if that attorney makes a "conscious decision" not to present that information to the court, "in contravention of the clear terms of the bankruptcy petition," the plaintiff is still "bound by the actions of [his or her] attorney[]." Lewis, 141 F. App'x 427–28 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633–34 (1962)). Ultimately, "purported attorney error is not evidence of an absence of bad faith." Payne, 2013 WL 3974575, at *6; see Bartlett, 2013 WL 394381, at *3.

    Here, Plaintiff's ignorance argument is a nonstarter, as seen in the aforementioned cases. First, it is hard to believe that Plaintiff was completely ignorant to the fact that his complaints did not rise to the level of potential unliquidated claims for the purposes of his bankruptcy petition.

In a meeting between Plaintiff, Defendant's quality engineer, Radford, and Plaintiff's Union representative, John York, York stated that "the best thing" for Plaintiff to do was to "see a lawyer." Therefore, it appears that Plaintiff's alleged ignorance of the fact that his complaints could amount to actionable claims is contradictory to the facts of the case. Regardless, Plaintiff was represented both in bankruptcy and in the instant action, so the Court finds any claims of ignorance or misunderstanding to be unreasonable, as he was counseled by more than one party. If there was any confusion or uncertainty as to whether these complaints needed to be disclosed as claims in his schedule of personal assets, Plaintiff had the ability to seek advice from two separate attorneys. Even if Plaintiff's attorneys made some conscious effort to omit the claim from the bankruptcy filings, this cannot help Plaintiff survive judicial estoppel.

  c. **Non-Monetary Relief**

  Lastly, Plaintiff has argued that judicial estoppel should not bar his undisclosed causes of action because he only sought non-monetary relief at the time of filing his petition. Other plaintiffs have argued that because their claims would produce no capital to pay the debtor's creditors, they did not need to be disclosed in the bankruptcy filings. This argument has proved unsuccessful as well. "[J]udicial estoppel is applicable even to [a plaintiff's] claims for injunctive relief" because knowledge about potential claims "may have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy." Dockery, 2010 WL 2667376, at *6. Therefore, even asserting that the claim was non-monetary in nature does not save it from the application of judicial estoppel. (Id.)

  Here, the fact that Plaintiff claims that he was simply seeking non-monetary relief cannot hold. As seen, claims for non-monetary relief must be disclosed to the bankruptcy court just as any other claims. Furthermore, Plaintiff's EEOC charge initially may have only sought relief

from the EAP counseling, but at the time of filing for bankruptcy, Plaintiff had filed numerous other outstanding complaints and grievances alleging discrimination and retaliation. Therefore, Plaintiff was not truly only seeking non-monetary relief, as the instant action, which is based on all of his complaints, charges, and grievances, seeks all lost wages and other benefits, compensatory damages, punitive damages, pre- and post-judgment interest, all costs and attorneys' fees, and any and all other legal and/or equitable relief. Therefore, even if Plaintiff had only sought non-monetary relief in *one* of his numerous pre-petition claims, he now seeks purely monetary relief, so this argument is now moot, as he has not amended his schedules to include these pecuniary claims.

Overall, Plaintiff's assertions that he omitted the instant action due to inadvertence and in good faith are ineffective to prevent the application of judicial estoppel. Plaintiff never disclosed any of his claims in his bankruptcy petition and has produced no evidence that he has disclosed his claims or amended his schedules at any later time. Based on Sixth Circuit precedent, this Court can find no facts or reasons to support a decision declining to apply the doctrine of judicial estoppel in order to preserve the integrity of the courts. For that reason, the Court must grant Defendant's Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

cc: counsel of record